**Arthur BERNKLAU, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent Appellee.**

**No. 00–7122.**

United States Court of Appeals, Federal Circuit.

May 20, 2002.

Robert V. Chisholm, Chisholm Chisholm & Kilpatrick, of Providence, Rhode Island, argued for claimant-appellant.

Virginia G. Farrier, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were David M. Cohen, Director, and Donald E. Kinner, Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel, and Michelle Doses Bernstein, Attorney, Department of Veterans Affairs, of Washington, DC.

Before NEWMAN, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Arthur Bernklau ("appellant") seeks review of the final decision of the United States Court of Appeals for Veterans Claims that: (1) declined to exercise jurisdiction over arguments that appellant was entitled to an earlier effective date for a service-connected disability rating ("disability claim"), and (2) affirmed a February 12, 1987, effective date for the award of a total disability rating based upon individual unemployability ("TDIU claim"). *Bernklau v. West,* No. 98–1215 (Vet.App. Feb. 28, 2000).[1] We affirm.

## BACKGROUND

This appeal involves two separate claims by the appellant for disability benefits for an injury incurred during his military service ("service-connected injury"). We will discuss each claim in turn.

*The Disability Claim*

Mr. Bernklau served on active duty in the United States armed forces from July 1954 to June 1955, when he was honorably discharged. Following his discharge, the Department of Veterans Affairs ("agency")

---

1. On March 1, 1999, the name of the United States Court of Veterans Appeals was changed to the United States Court of Appeals for Veterans Claims pursuant to the enactment of the Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, § 511, 112 Stat. 3315, 3341. We refer to the court by its new name throughout the opinion.

determined that he was entitled to a disability rating due to a service-connected lower back injury. Mr. Bernklau's disability rating was initially set at zero percent in 1955, was increased to ten percent in 1956, and was the subject of a series of appeals and remands over the next thirty years. In an August 8, 1989, decision ("1989 Board decision"), the Board of Veterans' Appeals ("Board") increased the appellant's disability rating to a level of seventy percent, retroactive to November 3, 1983. So far as the record reveals, Mr. Bernklau did not appeal this decision at that time, and one of the issues in this case concerns the finality of this 1989 Board decision.

Though Mr. Bernklau did not appeal the 1989 Board decision, he later sought (in unrelated proceedings before the Regional Office and the Board) to obtain an earlier effective date for his disability rating. Ultimately the agency's Regional Office denied the claim for an earlier effective date for his disability rating. On review, the Board of Veterans' Appeals affirmed the Regional Office's decision. In denying Mr. Bernklau's claim for an earlier effective date, the Board reasoned in pertinent part that "[t]he veteran did not appeal the [1989 Board decision], and that decision is final." *In re Bernklau*, No. 95–00–053, slip op. at 11 (Bd.Vet.App. Mar. 18, 1998) (citing 38 U.S.C. § 7104).

The Board recognized that "a claim which was previously adjudicated," (*i.e.*, a final claim) may be reopened if "new and material evidence is presented" by the veteran. *Id.* And Mr. Bernklau provided the Board with documents to support his claim for an earlier effective date. *Id.* at 16. But the Board concluded that "[t]he contentions raised in these numerous submis-

sions are, however, duplicative of the arguments raised and considered before the Board in August 1989." *Id.* at 16–17. Thus, it ruled that "the additional evidence received since the August 1989 decision is not new and material and does not provide the required evidentiary basis to reopen the [appellant's] claim for an earlier effective date for the 70[%] rating for the back disability." *Id.* at 19.

Mr. Bernklau appealed to the Court of Appeals for Veterans Claims. On that appeal, he argued that "the effective date issue was not before the Board at the time of the August 1989 decision; that the Board erred in addressing that issue in the first instance; and that this error rendered the decision nonfinal." *Bernklau v. West*, No. 98–1215, slip op. at 2 (Vet.App. Feb. 28, 2000) ("*Bernklau*"). In other words, Mr. Bernklau argued that because the 1989 Board decision was non-final, the submission of "new and material evidence" was not required for readjudication of his claim.

He also argued that the 1989 Board decision was not final because the Board had never responded to two communications. First, he characterized an April 30, 1956, letter from his representative to the Regional Office as a Notice of Disagreement ("NOD") with an October 1955 Regional Office decision to assign appellant a zero-percent rating for his service-connected disability.[2] The agency's failure to issue a Statement of the Case to him in response to that alleged NOD (as required by 38 U.S.C. § 7105(d)(1)), appellant argued, rendered the 1989 Board decision non-final. Second, Mr. Bernklau pointed to a January 31, 1980, letter to the Regional Office in which he complained that the agency had "overlooked [his] service con-

---

**2.** The agency's Regional Office treated the April 30, 1956, letter from Mr. Bernklau's representative as a claim to reopen the zero-

percent rating for this service-connected disability, and increased his disability rating to ten percent.

nected disability" when evaluating his eligibility for benefits for a heart attack suffered in May 1979. That 1980 letter, Mr. Bernklau argued, was an informal claim for an earlier effective date for his disability rating.

The Court of Appeals for Veterans Claims held that it lacked jurisdiction over Mr. Bernklau's appeal regarding an earlier effective date for his disability claim. Regarding the appellant's argument that the 1989 Board decision was not final, the court noted that the appellant "did not reasonably raise that argument to the Board [of Veterans' Appeals], even though he had been notified on several occasions prior to the decision on appeal that the August 1989 [Board] decision was considered final." *Bernklau*, slip op. at 3. Pointing to our decision in *Maggitt v. West*, 202 F.3d 1370 (Fed.Cir.2000) (discussed below), the court accordingly held in pertinent part that:

> [T]he Court, in its discretion, will decline to exercise its jurisdiction over this argument (which was presented for the first time on appeal), because the appellant has failed to demonstrate that there are significant reasons for remanding the matter to the [Board of Veterans' Appeals] for its consideration of this argument in the first instance.

*Bernklau*, slip op. at 3. And the court further concluded that it lacked jurisdiction over appellant's argument that the allegedly pending claims provided a proper basis for an earlier effective date, as "the appellant did not raise to the Board ... any argument regarding such pending claims." *Id.* at 4. In short, the court declined to exercise jurisdiction over Mr. Bernklau's arguments because he had not exhausted his administrative remedies by first raising those arguments before the Board of Veterans' Appeals.

Notwithstanding its conclusion that it lacked jurisdiction, however, the court stated that "it does not appear that the [Board of Veterans' Appeals] erred in 1989 in addressing the effective date issue," and further concluded that "even if the appellant could demonstrate that the Board (in August 1989) erred and that such an error rendered the August 1989 Board decision nonfinal, it appears that the appellant would not be entitled to an earlier effective date." *Id.* at 4. In other words, the court appeared to rule on the factual merits of appellant's claims for an earlier effective date for his disability rating.

On his appeal to the Court of Appeals for Veterans Claims, Mr. Bernklau separately argued that he was entitled to a total disability rating based upon individual unemployability ("TDIU"). It is to that claim that we now turn.

*The TDIU Claim*

In March 1989, Mr. Bernklau filed a separate claim for TDIU disability benefits arising from his service-connected lower back injury. TDIU benefits are separate from injury-specific disability benefits, and may be awarded "when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities...." 38 C.F.R. § 4.16(a) (1989). To qualify for TDIU benefits where (as here), the veteran suffers from a single service-connected disability, that disability must "be ratable at 60 percent or more...." *Id.* Once the veteran obtains that disability rating (or, of course, a higher rating), he is eligible for TDIU benefits. Thus, in the 1989 Board decision that increased his disability rating to seventy percent, the Board also accordingly instructed the agency's Regional Office to adjudicate this TDIU claim.

The Regional Office denied the claim on September 5, 1989, prompting another series of appeals and remands, including an appeal to this court. *See Bernklau v. Derwinski,* No. 92–7038, 1992 WL 276388 (Fed.Cir. Oct.9, 1992) (unpublished disposition) (holding in pertinent part that this court lacked jurisdiction to hear the appeal). On September 3, 1993, the Board granted the appellant's TDIU claim, and ultimately assigned a February 1987 effective date for the resulting TDIU rating. *In re Bernklau,* No. 95–00–053, slip op. at 31 (Bd.Vet.App. Mar. 18, 1998).

Mr. Bernklau appealed this effective date to the Court of Appeals for Veterans Claims. On that appeal, he claimed entitlement to an earlier effective date for his TDIU rating based on his January 31, 1980, letter to the Regional Office (regarding his May 1979 heart attack), which he characterized as an unadjudicated informal claim for TDIU. In the alternative, he argued that his subsequent, separate informal TDIU claim (made during an unrelated Board appeal in 1985) warranted an earlier effective date. *Bernklau,* slip op. at 5.

The Court of Appeals for Veterans Claims held that Mr. Bernklau "has not demonstrated that the Board's determination regarding the effective date for TDIU is clearly erroneous," and accordingly upheld the Board's award of the February 1987 effective date. *Id.* at 6. The court first declined to exercise jurisdiction over appellant's argument that the January 1980 correspondence justified an earlier effective date, noting that "he did not reasonably raise such a contention to the Board prior to the decision on appeal." *Id.* at 5. And the court noted that the Board "after thoroughly reviewing the [1985] hearing testimony," had concluded that Mr. Bernklau "had not raised an informal claim for TDIU at that hearing."

*Id.* at 6. The court agreed, stating that appellant "did not aver at that hearing that his service-connected back condition had caused him to be unemployable." *Id.* The court accordingly affirmed the Board's rejection of appellant's claim for an earlier effective date for his TDIU rating. This timely appeal followed.

## DISCUSSION

### I

Our jurisdiction to review decisions of the Court of Appeals for Veterans Claims is limited by statute. We have jurisdiction "to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof ... and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c) (1994); *see generally Forshey v. Principi,* 284 F.3d 1335 (Fed.Cir.2002) (en banc). Unless there is a constitutional issue presented, however, we may not review factual determinations. 38 U.S.C. § 7292(d)(2) (1994). The jurisdictional reach of the Court of Appeals for Veterans Claims presents a question of law for our plenary review. *Maggitt v. West,* 202 F.3d 1370, 1374 (Fed.Cir.2000).

### II

On this appeal, Mr. Bernklau contends that the decision of the Court of Appeals for Veterans Claims not to hear the arguments presented in the first instance to that court is contrary to our recent decision in *Maggitt v. West,* 202 F.3d 1370 (Fed.Cir.2000), and that court's jurisdictional statute, 38 U.S.C. § 7252. We do not agree.

*Maggitt* presented the question whether the Court of Appeals for Veterans Claims has jurisdiction to hear arguments not previously made before the Board of

Veterans' Appeals. We held that the Court of Appeals for Veterans Claims "has jurisdiction to hear arguments presented to it in the first instance, provided it otherwise has jurisdiction over the veteran's claim." *Maggitt,* 202 F.3d at 1377. We made clear, however, that the court was not *required* to hear arguments not raised "earlier in the veterans' benefit claim process." *Id.* Rather, where (as here), "Congress has not clearly mandated the exhaustion of particular administrative remedies, the exhaustion doctrine ... is a matter for the exercise of 'sound judicial discretion.'" *Id.* (quoting *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

We further noted that the decision whether to exercise jurisdiction in such cases "entails a case-by-case analysis of the competing individual and institutional interests, including whether the [Court of Appeals for Veterans Claims] should use its authority to 'remand the matter, as appropriate,' to the Board [of Veterans' Appeals]." *Id.* at 1378 (quoting 38 U.S.C. § 7252(a) (1994)). In other words, we instructed that "the decision on the issue be case-specific in balancing the competing interests of the veteran and the government." *Id.*

Mr. Bernklau argues that nothing in the decision on appeal indicates here that the court weighed the "competing interests of the veteran and the government," *id.,* when deciding not to exercise jurisdiction over his newly-raised arguments. Because the decision does not reflect that the court performed the "case-specific" analysis required by *Maggitt,* appellant contends that we should assume that the court did not do so, and vacate and remand for adjudication of his newly-raised arguments.

It is true that the Court of Appeals for Veterans Claims did not articulate whether it weighed the "competing interests" of the government and Mr. Bernklau before it declined jurisdiction over Mr. Bernklau's new arguments. But that does not mean that we must assume that the court failed to fulfill its obligations under *Maggitt.*

■ It is well-established that a "litigant's right to have all issues fully considered and ruled on by the appellate court does not equate to a right to a full written opinion on every issue raised." *United States v. Garza,* 165 F.3d 312, 314 (5th Cir.), *cert. denied,* 528 U.S. 1006, 120 S.Ct. 502, 145 L.Ed.2d 388 (1999); *see also Taylor v. McKeithen,* 407 U.S. 191, 194 n. 4, 92 S.Ct. 1980, 32 L.Ed.2d 648 (1972) (stating that courts of appeals have wide latitude in deciding whether and how to write an opinion). While it may be desirable in some cases to afford each issue a complete written discussion, no statute or rule compels such an approach by the Court of Appeals for Veterans Claims (or indeed any other court). *See, e.g., Furman v. United States,* 720 F.2d 263, 264 (2d Cir. 1983) ("There is no requirement in law that a federal appellate court's decision be accompanied by a written opinion.").

■ Moreover, courts are entitled to the "presumption of regularity" when rendering their decisions. As we have previously held:

> The "presumption of regularity" supports official acts of public officers. In the absence of clear evidence to the contrary, the doctrine presumes that public officers have properly discharged their official duties.

*Butler v. Principi,* 244 F.3d 1337, 1340 (Fed.Cir.2001) (affirming application of the presumption by the Court of Appeals for Veterans Claims to agency's actions). When this presumption applies, courts may "presume that what appears regular is regular," and the burden shifts "to the attacker to show the contrary." *Id.*

■ This presumption is afforded to tribunals in the conduct of judicial proceedings to the same extent that it is afforded "public officers" in the discharge of their official duties. *See Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("When collaterally attacked, the judgment of a court carries with it a presumption of regularity."); *see also Michigan v. Doran*, 439 U.S. 282, 290, 99 S.Ct. 530, 58 L.Ed.2d 521 (1978) (Judicial determinations of probable cause to extradite fugitives are "clothed with the traditional presumption of regularity," and thus "the courts of the asylum state are without power to review" those determinations.). We accordingly presume that the court weighed the competing interests of Mr. Bernklau and the government when it declined to hear the new arguments. And appellant has provided us with no "clear evidence to the contrary" that would rebut that presumption. *Butler*, 244 F.3d at 1340.

■ Mr. Bernklau also points to the jurisdictional statute for the Court of Appeals for Veterans Claims, 38 U.S.C. § 7252, which authorizes that court in pertinent part to "review decisions of the Board of Veterans' Appeals." *Id.* § 7252(a). Appellant contends that section 7252 requires the Court of Appeals for Veterans Claims to review not only decisions of the Board of Veterans' Appeals, but also to adjudicate *arguments* not initially raised before the Board. We do not agree, as nothing in section 7252 compels (or even remotely suggests) such a conclu-

sion. Moreover, this argument is merely an invitation to revisit our holding in *Maggitt*. As Mr. Bernklau is well aware, "this panel lacks the authority to overturn a prior decision of another panel." *Hensley v. West*, 212 F.3d 1255, 1261 (Fed.Cir.2000) (citing *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982) (en banc)). Even if we could overturn *Maggitt*, however, we would not do so, as we agree with its holding.

In sum, we conclude that the Court of Appeals for Veterans Claims did not fail to follow *Maggitt* or its jurisdictional statute when it declined jurisdiction over the arguments not previously made to the Board of Veterans' Appeals.[3]

### III

We also affirm the Court of Appeals for Veterans Claims' conclusion that Mr. Bernklau was not entitled to an earlier effective date for his TDIU claim. We discern no legal error in the court's reasoning that "the appellant has not demonstrated that the Board's determination regarding the effective date for TDIU is clearly erroneous." *Bernklau*, slip op. at 6.

### IV

■ In his reply brief and at oral argument, Mr. Bernklau directed our attention to the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat.2096 ("VCAA"), which was enacted during the pendency of this appeal. He argues that

---

3. Mr. Bernklau also directs our attention to *Hensley v. West*, 212 F.3d 1255 (Fed.Cir. 2000), wherein we noted in pertinent part that factual determinations of the Board of Veterans' Appeals shall not "be subject to trial de novo by the Court of Appeals for Veterans Claims." *Id.* at 1263 (quoting 38 U.S.C. § 7261(c)) (brackets omitted). Mr. Bernklau argues that in the decision on appeal here, the

Court of Appeals for Veterans Claims made certain factual determinations regarding his claim for an earlier effective date for his disability rating, and that under *Hensley* those determinations create reversible error. But in view of our affirmance of the court's decision to decline jurisdiction over Mr. Bernklau's newly-raised arguments, we need not reach this question.

section 3(a) of the VCAA is retroactive; that it requires the Department of Veterans Affairs to provide a higher level of assistance to claimants than under the earlier statute; and that the agency failed to provide such assistance in this case, requiring that we vacate and remand the decision on appeal. We do not agree, as we conclude that the duties imposed on the agency by section 3(a) of the VCAA are not retroactive, and thus do not apply to claims pending on the date of the VCAA's enactment (November 9, 2000). We accordingly do not reach the other issues raised by Mr. Bernklau concerning the interpretation of the new legislation.

The VCAA instituted a comprehensive overhaul of the statutory scheme governing the award of veterans' benefits. Three sections of the legislation are involved here.

Section 3 of the legislation, entitled "Assistance to Claimants," imposed three obligations on the agency when adjudicating veterans' claims, two of which are relevant here.[4] First, section 3(a) of the VCAA imposed on the agency a duty to inform the claimant of information "that is necessary to substantiate the claim" for benefits. That duty is codified at 38 U.S.C. § 5103, as amended.[5] Second, section 3(a) created 38 U.S.C. § 5103A, which set out in detail the agency's duty to assist the veteran in the development of claims for benefits.[6] Prior to the enactment of the VCAA, a version of this "duty to assist" had been codified in 38 U.S.C. § 5107.[7]

Another provision of the VCAA, section 4, 114 Stat.2098, also eliminated the requirement (under the old version of 38 U.S.C. § 5107) that the veteran's claim be well grounded before the agency's duty to assist arises. *See* 38 U.S.C. § 5107(a) (1994) (imposing on a veteran the "burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded"). This section of the VCAA overruled our decision in *Epps v. Gober*, 126 F.3d 1464, 1469 (Fed.Cir.1997), *cert. denied*, 524 U.S. 940, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998), where we interpreted the pre-VCAA version of 38 U.S.C. § 5107 to "require[ ] a claimant to submit and establish a 'well grounded' claim before the [Department of Veterans Affairs] is required to provide assistance to a claimant in developing the facts underlying his or her claim." Appellant does not directly rely on section 4, but it is relevant here to the retroactivity issue.

**4.** Section 3(a) of the VCAA also amended 38 U.S.C. § 5102, but that amendment is not relevant to this appeal.

**5.** The legislation amended 38 U.S.C. § 5103 to state in pertinent part: "Upon receipt of a complete or substantially complete application, the [Department of Veterans Affairs] shall notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the [Department of Veterans Affairs] that is necessary to substantiate the claim." VCAA, § 3(a), 114 Stat.2096–97.

**6.** New section 5103A states in pertinent part: "The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C. § 5103A(a)(1) (West Supp.2001).

**7.** The pre-VCAA version of 38 U.S.C. § 5107 stated in pertinent part that "a person who submits a claim for benefits under a law administered by the [Department of Veterans Affairs] shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded. The [Department of Veterans Affairs] shall assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a) (1994).

Section 7(a) of the VCAA (discussed below), provides in pertinent part that "[e]xcept as specifically provided otherwise, the provisions of section 5107 of title 38, United States Code, as amended by section 4 of this Act, apply to any claim ... filed before the date of the enactment of this Act and not final as of that date." VCAA, § 7(a).[8] (The VCAA does not define the term "final," but we understand it to mean final decisions that are no longer subject to appeal.) No similar provision provides that section 3(a) shall be retroactive. But newly-enacted section 5103A(f) of Title 38 (set forth in section 3(a) of the VCAA) also provides in pertinent part that "[n]othing in this section [*i.e.*, 38 U.S.C. § 5103A] shall be construed to require the [Department of Veterans Affairs] to reopen a claim that has been disallowed except when new and material evidence is presented or secured...." VCAA, § 3(a). *See generally* H.R.Rep. No. 106–781, at 11 (2000), *reprinted in* 2001 U.S.C.C.A.N. 2006, 2014.

 The retroactivity issue was not passed upon by the Court of Appeals for Veterans Claims or raised before that court. However, under our decision in *Forshey v. Principi*, 284 F.3d 1335 (Fed. Cir.2002) (en banc), we have "authority to decide other 'relevant' questions of law ... addressing the impact of new statutes or new judicial interpretations while the case is on appeal...." *Id.* at 1352. We also may appropriately consider the issue even though it was not raised below because prudential considerations do not suggest that we should decline to address it, and "[w]hen new legislation is passed while an appeal is pending, courts have an obligation to apply the new law if Congress

intended retroactive application even though the issue was not decided or raised below." *Id.* at 1355; *see also Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."). We accordingly turn our attention to the merits of the retroactivity issue.

 We recently held in *Dyment v. Principi*, 287 F.3d 1377, 1384 (Fed.Cir. 2002), "that section 3(a) of the VCAA, unlike section 4, was not intended to be given retroactive effect." That decision was plainly correct. The Supreme Court has instructed that "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 226, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 273–280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). But the Supreme Court has also held repeatedly that federal legislation is to be construed to avoid retroactivity unless we can discern clear congressional intent for that result. *See, e.g., Landgraf*, 511 U.S. at 270, 114 S.Ct. 1522 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("[C]ongressional enactments and administrative rules will not be con-

---

**8.** In addition to this general rule of retroactivity for section 4, section 7 of the VCAA allows (in some instances) the readjudication of closed claims, if the claimant or agency re-

quests such readjudication within two years of the date of the enactment of the VCAA. VCAA, § 7(b)(3).

strued to have retroactive effect unless their language requires this result."). And the Court has emphasized that "[t]he standard for finding such unambiguous direction is a demanding one. 'Cases where this Court [*i.e.*, the Supreme Court] has found truly 'retroactive' effect adequately authorized by statute have involved statutory language that was so clear that it could sustain only one interpretation.'" *I.N.S. v. St. Cyr*, 533 U.S. 289, 316–17, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citing *Lindh v. Murphy*, 521 U.S. 320, 328 n. 4, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

Congress has not "made clear its intent" to give retroactive effect to section 3(a) of the VCAA. *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1522. There are two provisions of the legislation that deal specifically with retroactivity and that point in directly opposite directions with respect to the retroactivity of section 3(a) of the legislation. The existence of 38 U.S.C. § 5103A(f) (specifically providing that the duty to assist provisions of section 3(a) should not apply to closed cases) perhaps suggests that at least the duty to assist set forth in section 3(a) of the VCAA should apply retroactively to all pending claims. The existence of section 7(a) of the VCAA (specifically requiring only the application of section 4 of the legislation to pending claims) perhaps suggests, in turn, that section 3(a) of the VCAA should *not* apply retroactively to pending claims. But no provision deals specifically with the question of whether section 3(a) of the VCAA should apply to non-final proceedings on direct appeal.

In *Landgraf*, the Supreme Court suggested that under such circumstances we apply the normal rules of retroactivity. There the Court held that section 102 of the Civil Rights Act of 1991 did not apply to cases pending on appeal when that legislation was enacted. 511 U.S. at 286, 114 S.Ct. 1522. In reaching that conclusion,

the Court recognized that Congress had specifically provided that two other provisions of the legislation be given prospective effect. *Id.* at 257–58, 114 S.Ct. 1522. But it rejected the argument that Congress' intention to apply those two provisions prospectively necessarily meant "that it intended the opposite for the remainder of the statute," *id.* at 259, 114 S.Ct. 1522, stating in pertinent part:

> That argument depends on the assumption that all those other provisions must be treated uniformly for purposes of their application to pending cases based on preenactment conduct. That thesis, however, is by no means an inevitable one.... Our precedents on retroactivity ... suggested that some provisions might apply to cases arising before enactment while others might not.

*Landgraf*, 511 U.S. at 260–61, 114 S.Ct. 1522. Elsewhere the Court stated "there is no special reason to think that all the diverse provisions of the [Civil Rights Act of 1991] must be treated uniformly for such purposes [of retroactive application]." *Id.* at 280, 114 S.Ct. 1522. So here the existence of other provisions concerning retroactivity is not conclusive concerning the retroactivity of section 3(a) as applied to open cases.

The legislative history might be read to suggest that Congress intended all provisions of the VCAA, and not merely those contained in section 4, to be applied to pending claims. The House Report, for example, makes clear that "*this Act* would apply to claims filed after the date of enactment or which have not been finally decided as of that date." H.R.Rep. No. 106–781, at 11 (2000), *reprinted in* 2001 U.S.C.C.A.N.2006, 2014 (emphasis added). And the corresponding Senate report states that "proposed section 5103A would apply to any claim filed or pending before [the Department of Veterans Affairs] or the applicable appellate court on or after the date of enactment." S.Rep. No. 106–

397, at 24 (2000). Section 5103A, in turn, is in section 3(a) of the VCAA. These general statements in the legislative history, however, find no clear expression in the statutory text.

We conclude that there is no clear direction by Congress to apply section 3(a) of the VCAA retroactively to open proceedings. We accordingly must determine the retroactivity of section 3(a) of the VCAA to open proceedings by reference to the normal rules of statutory construction and " 'in light of ordinary judicial principles concerning the application of new rules to pending cases and preenactment conduct.' " *Lowry v. Sec'y of Health & Human Servs.*, 189 F.3d 1378, 1380 (Fed. Cir.1999) (quoting *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1522). Those normal rules require that we avoid retroactivity.

But, assuming that section 3(a) is not to be applied retroactively to open proceedings, that leaves one question unanswered; namely, what constitutes retroactive application of the statutory provisions set forth in section 3(a). We need not decide whether applying section 3(a) to proceedings already commenced at the time of enactment of the VCAA and still pending before the agency's Regional Office or the Board of Veterans' Appeals would constitute retroactive application of the statute.[9] We have here a proceeding which was complete before the agency, but which was on appeal at the time the VCAA was enacted. Under these circumstances, we hold that the case should not be remanded to the Court of Appeals for Veterans Claims (or, in turn, the Board of Veterans' Appeals) for further proceedings under section 3(a) of the VCAA.

In sum, we conclude that section 3(a) of the VCAA does not apply retroactively to

require that proceedings that were complete before the Department of Veterans Affairs and were on appeal to the Court of Appeals for Veterans Claims or this court be remanded for readjudication under the new statute.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals for Veterans Claims.

*AFFIRMED.*

## COSTS

No costs.

---

**9.** We note that the new regulations associated with the VCAA apply to "any claim for benefits received by [the Department of Veterans Affairs] on or after November 9, 2000, the VCAA's enactment date, as well as to any claim filed before that date but not decided by [the Department of Veterans Affairs] as of that date." 66 Fed.Reg. 45,629 (Aug. 29, 2001).